# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| AGIS SOFTWARE DEVELOPMENT LLC, | § § § | Case No. 2:21-cv-00072-JRG (LEAD CASE) |
| Plaintiff, | § § | |
| v. | § § | **JURY TRIAL DEMANDED** |
| T-MOBILE USA, INC. and T-MOBILE US, INC., | § § § § | |
| Defendant. | § § | |
| AGIS SOFTWARE DEVELOPMENT LLC, | § § § | Case No. 2:21-cv-00024-JRG (CONSOLIDATED CASE) |
| Plaintiff, | § § | |
| v. | § § | **JURY TRIAL DEMANDED** |
| LYFT, INC., | § § § | |
| Defendant. | § § § | |

**PLAINTIFF AGIS SOFTWARE DEVELOPMENT LLC'S SUR-REPLY
IN FURTHER OPPOSITION TO DEFENDANT LYFT, INC.'S
MOTION TO DISMISS FOR IMPROPER VENUE (DKT. 30)**

Plaintiff AGIS Software Development LLC ("AGIS" or "Plaintiff"), by and through its undersigned counsel, hereby submits this sur-reply in opposition to Defendant Lyft, Inc.'s ("Defendant" or "Lyft") Motion to Dismiss for Improper Venue (Dkt. 30) (the "Motion").

AGIS has established that venue is proper over Lyft in this District pursuant to 28 U.S.C. § 1400(b) and controlling Federal Circuit precedent, *In re Cray Inc.,* 971 F.3d 1355 (Fed. Cir. 2017) and *In re Google LLC,* 949 F.3d 1338 (Fed. Cir. 2020). The facts show that Lyft conducts business in this District by putting into practice the Lyft platform in this District and charging customers of this District for rides in Lyft vehicles operated by Lyft drivers in the District and by controlling and/or possessing a physical Lyft Express Drive location in the District for Lyft drivers and personnel in the District. Lyft's Reply fails to show otherwise. Alternatively, AGIS has shown that venue discovery is warranted to uncover additional facts that are relevant and material to the venue inquiry. Thus, Lyft's Motion must be denied.

In the event the Court finds that venue is not proper, and that transfer is warranted under 28 U.S.C. § 1406, AGIS respectfully requests that this Court transfer this action to the Western District of Texas ("WDTX") instead of the Northern District of California ("NDCA").

**I.    LYFT'S MOTION MUST BE DENIED**

Lyft maintains regular and established places of business in this District. The Express Drive Location satisfies the second *Cray* factor, requiring a "regular and established place of business," because, as pled in AGIS's Complaint, they are places from which Lyft "actually engage[s]" in business from the physical location in the District." Dkt. 64, "Resp." at 9-14. As submitted by AGIS, Lyft's website lists the "Lyft Express Drive Plano" as a pick-up location. *Id.* at 9-14. The Lyft Express Drive Plano is a physical place in this District that Lyft exerts control over. *See id.* at 11-12. Moreover, Lyft misstates the standards under *Cray* and *Google*—a defendant is not required to (1) lease or compensate another party for use of space; and (2) have

employees that staff the location. *Id.* at 9 ("A defendant is *not* required to own or lease the place if it exercises other attributes of possession or control over the place (*id.*) and the statute can 'be satisfied by any physical place that the defendant could 'possess[] or control.'") (citing *In re Google,* 949 F.3d at 1343).

Similarly, Lyft alleges that because a vehicle can "easily move," it cannot establish a regular and established place of business. Again, these are physical locations from which the business of Lyft is conducted, which is the entire business model of Lyft. Resp. at 9. Nonetheless, the Federal Circuit has stated that "a fixed physical location in this district is not a prerequisite to proper venue." *Id.* at 10 (citing *In re Cray*, 871 F.3d at 1362). Contrary to Lyft's contentions, AGIS has set forth detailed responses to Lyft's Motion regarding Lyft's vehicles. *See id.* at 10-11. Moreover, there is no dispute that Lyft conducts business from these locations where Lyft authorizes the matching of drivers and riders (*id*. at 10) and drivers cannot provide Lyft's services within this District without first meeting at least Lyft's driver requirements, and state and local requirements. *Id.* Additionally, AGIS has demonstrated the level of ratification and control exerted by Lyft over the Lyft vehicles and drivers, including the extensive vehicle requirements, terms and services, and the driver addendum by which the vehicles and drivers must enter and abide in order to operate a vehicle on behalf of Lyft. *See id*. at 15. A driver cannot drive or connect with a rider without the explicit authorization of Lyft. *Id.* Lyft regulates the use of its logo, brand, and emblem by its drivers and vehicles (*id.* at 16), all drivers "represent the brand and help to create goodwill," (*id.*), and Lyft offers its "Driver Services" and "Mobile Services" through which Lyft offers maintenance, service and repairs, diagnostic inspections, driver support, and other services for its vehicles. *Id.* Accordingly, Lyft's vehicles are regular and established places of business of Lyft.

In addition, the Denton County Transportation Authority ("DCTA") has partnered with Lyft to "allow certified Lewisville Access customers the ability to travel from the city of Lewisville to designated geofenced zones in Flower Mound for medical related trips." Ex. V, Lewisville Access to Flower Mound Lyft Program. Lyft, through the DCTA, provides three "zones," (*id.*), and users can select the "designated Lewisville Access to Flower Mound Lyft Zone." *Id.* Once a ride is requested through Lyft, "Lyft will contact nearby drivers, and provide customers information on the expected arrival time, driver identification, and vehicle information," and "Lyft will text the customer when the driver is nearby and ready for pickup." *Id.* Lyft's partnership with the DCTA also extends to a "Highland Village Lyft Zone" which provides Lyft customers with transit options within Highland Village and North Lewisville, which are located within this District. Ex. W, DCTA Highland Village and North Lewisville; *see* Ex. X, White Paper on TNCs and Transit Mobility ("The Denton County Transportation Authority launched a partnership with Lyft in 2018 in an effort to continue providing more transit options for those traveling within Highland Village and north Lewisville."). DCTA "chose to create a common geofenced area to qualify trips within the specified zone," based on "Lyft's user interface platform." *Id.* Lyft also partners with the University of North Texas ("UNT") to provide rides on campus to UNT students in the "UNT Lyft Zone." Ex. Y, UNT/Lyft. UNT maintains four campuses, including three located in this District: Denton, Frisco, and McKinney. Ex. Z, UNT Locations. These "Lyft Zones" are (1) physical places in this District; (2) regular and established places of business within this District; and (3) places of business of Lyft.

With regard to Lyft's allegations regarding the '838 Patent, AGIS has adequately pled acts of infringement in this District as they relate to the claims of the '838 Patent. *See* Resp. at 16-20. As stated in AGIS's opposition, AGIS has sufficiently pled direct and indirect infringement with

3

respect to the '838 Patent and AGIS is not required to set forth in detail its infringement theories at this stage. *See id.* at 19-20 ("However, '[t]he issue of infringement is not reached on the merits in considering venue requirements.'") (citing *Seven Networks LLC v. Google LLC*, 315 F. Supp. 3d 933, 942-43 (E.D. Tex. 2018)).

Notably, Lyft submits that it does not operate any servers in Texas (Dkt. 87 "Reply" at 8), however does not dispute that it relies on third-party servers, including AWS servers. *Id.* at 9. Nonetheless, AGIS has alleged that Lyft and its customers and/or end-users have performed at least one step of the '838 Patent claims in this District and some portion of Lyft's infringing products, systems, and/or servers is located in this District. *Id.* at 19. Accordingly, venue is proper in this District with respect to the '838 Patent.

To the extent the Court finds that Lyft does not reside in this District, AGIS respectfully requests that it be permitted to conduct venue discovery prior to a determination on the Motion "to allow the adversarial process to aid the Court in making a fact-specific decision on a well-developed factual record." *Mallinckrodt IP v. B. Braun Med. Inc.*, No. 17-365-LPS, 2017 WL 6383610, at *3 (D. Del. Dec. 14, 2017). While Lyft contends that venue discovery is not necessary, the Court has discretion to allow targeted venue discovery. *See Uniloc 2017 LLC v. Riot Games, Inc.*, No. 2:19-CV-00223-JRG, 2020 WL 1158611, at *3 (E.D. Tex. Mar. 10, 2020) ("[T]he Court is of the opinion that Uniloc should be permitted to take additional venue discovery. It is therefore ORDERED that Uniloc has leave to conduct discovery in the following, narrowly tailored manner to *facilitate fair and full adjudication of the parties' venue disputes*.") (emphasis added); *see Blitzsafe Texas, LLC v. Mitsubishi Electric Corp.*, No. 2:17-CV-00430, 2019 WL 2210686, at *3 (E.D. Tex. May 22, 2019) ("[J]urisdictional discovery should only be denied where it is *impossible that the discovery 'could . . . add[] any significant facts*' that might bear on the jurisdictional

4

determination.") (emphasis added). Here, Lyft does not allege that it is *impossible* that discovery would yield relevant facts that may bear on the venue determination. *Id.* ("Put another way, jurisdictional discovery should typically be granted unless 'no amount of information . . . would strengthen' the movant's jurisdictional claims.").

Venue discovery would provide additional evidence regarding Lyft's servers and networks, and the nature of Lyft's relationships and agreements with its Express Drive locations and any partners regarding Lyft's servers and networks, including but not limited to AWS servers. Such agreements would shed light on Lyft's relationships with respect to offering its products and services in this District. *See Uniloc 2017 LLC*, 2020 WL 1158611, at *3; *Ultravision Techs., LLC v. GoVision, LLC*, No. 2:18-cv-00100-JRG-RSP, 2020 WL 887754, at *2 (E.D. Tex. Feb. 24, 2020). Accordingly, AGIS has specifically identified numerous additional facts that are relevant and material to the venue inquiry, including non-public information in Lyft's possession.

## II.   IN THE ALTERNATIVE, THIS ACTION SHOULD BE TRANSFERRED TO WDTX

Because venue is proper, and alternatively, venue discovery is warranted, Lyft's Motion should be denied. However, in the event that the Court finds that transfer is warranted, AGIS respectfully requests that this action be transferred to the WDTX, where venue over Lyft is undisputed. AGIS has demonstrated that, based on the §1404 convenience factors, the WDTX is clearly more convenient than the NDCA. Resp. at 21-26.

Lyft's reliance on *Quartz Auto Techs. LLC v. Lyft, Inc.*, is unavailing, where the plaintiff relied upon pendent venue to establish venue with regard to one of the Patents-in-Suit. No. 1:20-CV-00719-ADA, 2021 WL 1177886, at *3 (W.D. Tex. Mar. 29, 2021) ("Quartz argues that pendent venue over the '215 patent is proper in this case because the other four asserted patents are properly venued under the more restrictive provisions of § 1400(b) and there is a common

nucleus of operative facts among each of the infringement claims."). Unlike *Quartz Auto Techs.*, AGIS does not rely on pendent venue to establish venue regarding the '838 Patent and has set forth separate bases to demonstrate that venue is proper regarding the '838 Patent. Notably, while Lyft asserts that venue is improper in the WDTX, it did not move to dismiss for improper venue nor allege that venue is improper with regard to the remaining patents in *Quartz Auto Tech*.

Specifically, in Lyft's Motion, it requests that this Court transfer this case to "another district in which venue is proper as to Lyft." Contrary to Lyft's allegations, AGIS has established that this case could have been brought in the WDTX where Lyft maintains an office in Austin, Texas, Lyft "Hubs," Driver Vehicle Services, and Express Drive locations. Rather than address each of these locations, Lyft misguides this Court by alleging AGIS relies on job postings to establish a regular and established place of business. Lyft does not and cannot dispute that it has significant connections to the WDTX with access to employees and other sources of proof. Resp. at 21-26. While Lyft submits that its sources of proof are located in the NDCA, AGIS's headquarters and data center, along with its sources of proof, are located nearby in Marshall. Resp. at 22-25. This Court has also stated that "given the realities of today's digital world where what once would have been boxes and boxes of documents can now be delivered with the click of a mouse this factor's weight is at most minimal." *Quest NetTech Corp. v. Apple, Inc.*, No. 2:19-cv-00118-JRG, 2019 WL 6344267, at *4 (E.D. Tex. Nov. 27, 2019). Moreover, AGIS's sister entity and third-party AGIS, Inc., has an office in WDTX with relevant sources of proof. Resp at 23. Accordingly, this factor does not favor transfer.

AGIS has also shown that its witnesses would find it much more convenient to travel to Texas than California. *Id.* at 23-25. Where "[t]he convenience of the witnesses is probably the single most important factor in a transfer analysis," (*Quest NetTech*, 2019 WL 6344267, at *5)

6

Lyft fails to specifically identify a single witness from which the Court "should assess the relevance and materiality of the information the witness may provide." *In re Genentech, Inc.*, 556 F.3d 1338, 1343 (Fed. Cir. 2009). In contrast, AGIS has specifically identified witnesses with relevant knowledge. Similarly, AGIS identified several non-party witnesses, including but not limited to David Sietsema, who is located in this District, and Eric Armstrong, who lives and works in Allen, Texas. *See* Resp. at 24-25. Lyft identifies nine prior art witnesses. Reply at 12. However, "there is not clear indication that these witnesses will be relevant merely because they authored prior art" and Lyft has shown nothing further to show their relevance. *See Quest NetTech*, 2019 WL 6344267, at *5. Further, Lyft fails to demonstrate that these witnesses would be unwilling to travel to the WDTX. *See id.* Accordingly, both of these factors do not weigh in favor of transfer and Lyft has failed to show that the convenience of litigating in NDCA, which is far from AGIS, AGIS, Inc., its witnesses, and its sources of proof, outweighs litigating in WDTX, where Lyft itself maintains including numerous regular and established places of business. *Compare* Resp. at 22-25 *with* Reply at 11-13; *see Vocalife LLC v. Amazon.com, Inc.*, No. 2:19-cv-00123-JRG, 2019 WL 6345191, at *6 (E.D. Tex. Nov. 27, 2019). and a balance of the factors establishes that the WDTX is clearly more convenient for all parties.

The WDTX has a substantial local interest in adjudicating this dispute where AGIS is a Texas entity with its only office and data center located nearby in the EDTX, and its sister entity, AGIS, Inc. maintains an office in WDTX. *See* Resp. at 25-26. As demonstrated, the WDTX also has a substantial local interest where it maintains numerous regular and established places of business. Moreover, AGIS has submitted the Federal Judicial Statistics which indicate that the time from filing to trial in WDTX is substantially less than the NDCA. *See* Resp. at 26. Lyft

7

concedes that the remaining convenience factors do not favor transfer to NDCA. Accordingly, the balance of factors does not weigh in favor of transfer.

### III. CONCLUSION

Defendant's Motion to Dismiss for Improper Venue (Dkt. 30) should be denied in its entirety. Alternatively, AGIS respectfully requests that the Court permit it to conduct venue discovery prior to a determination on the Motion. In the event this Court finds venue improper, and transfer is warranted, in the interests of justice, AGIS respectfully requests that the Court transfer this case to the Western District of Texas.

Dated: June 22, 2021

Respectfully submitted,

/s/ *Vincent J. Rubino, III*
Alfred R. Fabricant
NY Bar No. 2219392
Email: ffabricant@fabricantllp.com
Peter Lambrianakos
NY Bar No. 2894392
Email: plambrianakos@fabricantllp.com
Vincent J. Rubino, III
NY Bar No. 4557435
Email: vrubino@fabricantllp.com
**FABRICANT LLP**
411 Theodore Fremd Ave., Suite 206 South
Rye, New York 10580
Telephone: (212) 257-5797
Facsimile: (212) 257-5796

Samuel F. Baxter
State Bar No. 01938000
Email: sbaxter@mckoolsmith.com
Jennifer L. Truelove
State Bar No. 24012906
Email: jtruelove@mckoolsmith.com
**MCKOOL SMITH, P.C.**
104 E. Houston Street, Suite 300
Marshall, Texas 75670
Telephone: (903) 923-9000
Facsimile: (903) 923-9099

***ATTORNEYS FOR PLAINTIFF AGIS***

*SOFTWARE DEVELOPMENT LLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on June 22, 2021, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).

/s/ Vincent J. Rubino, III
Vincent J. Rubino, III